**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA**

Case No. 21-23382-Civ-GAYLES/TORRES

ANDY PREDELUS,

    Plaintiff,

v.

ATAIN SPECIALTY INSURANCE
COMPANY,

    Defendant.

_____/

**ORDER ON DEFENDANT'S *DAUBERT* MOTION**

This matter is before the Court on Atain Specialty Insurance Company's ("Defendant") *Daubert* motion to strike and exclude Andy Predelus' ("Plaintiff") expert witness. [D.E. 30]. Plaintiff responded to Defendant's motion on September 6, 2022 [D.E. 38] to which Defendant replied on September 20, 2022. [D.E. 46]. Therefore, Defendant's motion is now ripe for disposition. After careful review of the motion, response, reply, relevant authority, and for the reasons discussed below, Defendant's motion is **DENIED**.[1]

## I. BACKGROUND

Plaintiff filed this action on August 31, 2021, in Florida state court and Defendant removed it to federal court on September 21, 2021, based on diversity jurisdiction. This case is a property insurance coverage dispute pursuant to an

---

[1] On August 23, 2022, the Honorable Darrin P. Gayles referred Defendant's *Daubert* motion to the undersigned Magistrate Judge for disposition. [D.E. 31].

1

insurance policy that Defendant issued to Plaintiff. The policy relates to a multi-family property located at 780 NE 127 Street, North Miami, Florida, for the period of August 28, 2020, to August 28, 2021.

Plaintiff alleges that on March 28, 2021, the property's sewer pipe system failed, causing wastewater backups in two of the property's units and resulting in water damage to interior finishes and flooring of the property. Plaintiff filed an insurance claim shortly thereafter. However, after inspecting the property, Defendant denied coverage for the alleged damages because, according to its interpretation of the insurance agreement, Plaintiff's loss was excluded by the terms of the policy. Plaintiff disagreed and commenced this lawsuit, alleging that Defendant's denial constituted a breach of the insurance policy. Among other things, the parties dispute whether the terms of the policy provide coverage of "tear-out" expenses, which are the costs associated with digging out and replacing the property's faulty sewage pipe system.

## II. APPLICABLE PRINCIPLES AND LAW

The decision to admit or exclude expert testimony is within the trial court's discretion and the court enjoys "considerable leeway" when determining the admissibility of this testimony. *See Cook v. Sheriff of Monroe County, Fla.*, 402 F.3d 1092, 1103 (11th Cir. 2005). As explained in *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993), the admissibility of expert testimony is governed by Fed. R. Evid. 702. The party offering the expert testimony carries the burden of laying the proper foundation for its admission, and admissibility must be shown by a

2

preponderance of the evidence. *See Allison v. McGhan Med. Corp.*, 184 F.3d 1300, 1306 (11th Cir. 1999); *see also United States v. Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004) ("The burden of establishing qualification, reliability, and helpfulness rests on the proponent of the expert opinion, whether the proponent is the plaintiff or the defendant in a civil suit, or the government or the accused in a criminal case.").

"Under Rule 702 and *Daubert*, district courts must act as 'gate keepers' which admit expert testimony only if it is both reliable and relevant." *Rink v. Cheminova, Inc.*, 400 F.3d 1286, 1291 (11th Cir. 2005) (citing *Daubert*, 509 U.S. at 589).[2] The purpose of this role is "to ensure that speculative, unreliable expert testimony does not reach the jury." *McCorvey v. Baxter Healthcare Corp.*, 298 F.3d 1253, 1256 (11th Cir. 2002). Also, in its role as "gatekeeper," its duty is not "to make ultimate conclusions as to the persuasiveness of the proffered evidence." *Quiet Tech. DC-8, Inc. v. Hurel-Dubois UK Ltd.*, 326 F.3d 1333, 1341 (11th Cir. 2003)

To facilitate this process, district courts engage in a three-part inquiry to determine the admissibility of expert testimony:

> (1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches

---

[2] Rule 702 states:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

> his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in *Daubert;* and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue.

*City of Tuscaloosa*, 158 F.3d 548, 562 (11th Cir. 1998) (citations omitted). The Eleventh Circuit refers to the aforementioned requirements as the "qualification," "reliability," and "helpfulness" prongs and while they "remain distinct concepts"; "the courts must take care not to conflate them." *Frazier*, 387 F.3d at 1260 (citing *Quiet Tech*, 326 F.3d at 1341).

In determining the reliability of a scientific expert opinion, the Eleventh Circuit also considers the following factors to the extent possible:

> (1) whether the expert's theory can be and has been tested; (2) whether the theory has been subjected to peer review and publication; (3) the known or potential rate of error of the particular scientific technique; and (4) whether the technique is generally accepted in the scientific community. Notably, however, these factors do not exhaust the universe of considerations that may bear on the reliability of a given expert opinion, and a federal court should consider any additional factors that may advance its Rule 702 analysis.

*Quiet Tech*, 326 F.3d at 1341 (citations omitted). The aforementioned factors are not "a definitive checklist or test," *Daubert*, 509 U.S. at 593, but are "applied in case-specific evidentiary circumstances," *United States v. Brown*, 415 F.3d 1257, 1266 (11th Cir. 2005). While this inquiry is flexible, the Court must focus "solely on principles and methodology, not on conclusions that they generate." *Daubert*, 509 U.S. at 594-95. It is also important to note that a "district court's gatekeeper role under *Daubert* 'is not intended to supplant the adversary system or the role of the jury.'" *Quiet Tech*, 326 F.3d at 1341 (quoting *Maiz v. Virani*, 253 F.3d 641, 666

4

(11th Cir. 2001)). Rather, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking but admissible evidence." *Daubert*, 509 U.S. at 580; *see also Chapman v. Procter & Gamble Distrib., LLC*, 766 F.3d 1296, 1306 (11th Cir. 2014) ("As gatekeeper for the expert evidence presented to the jury, the judge 'must do a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue.'") (quoting *Kilpatrick v. Breg, Inc.*, 613 F.3d 1329, 1335 (11th Cir. 2010)).

"[T]he objective of [the gatekeeping role] is to ensure the reliability and relevancy of expert testimony. It is to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999). The district court's role is especially significant since the expert's opinion "can be both powerful and quite misleading because of the difficulty in evaluating it." *Daubert,* 509 U.S. at 595 (quoting Jack B. Weinstein, *Rule 702 of the Federal Rules of Evidence is Sound; It Should Not Be Amended,* 138 F.R.D. 631, 632 (1991)).

### *III. ANALYSIS*

Defendant's motion seeks to exclude the testimony and expert report of Plaintiff's building engineering expert, Harold R. Charles, on three different grounds: (i) the untimeliness of Plaintiff's expert disclosure, (ii) the unreliability of

5

Mr. Charles' opinions, and (iii) the irrelevance of Mr. Charles' expert conclusions. Plaintiff responds by noting that Mr. Charles untimely disclosure – if untimely at all – was harmless, that Mr. Charles' methodology was sound and consistent with practices relied on by experts in his field, and that his opinions are relevant to the dispute of covered damages at hand. We will discuss each of these arguments in turn, but for the reasons that follow, we agree with Plaintiff that exclusion of Mr. Charles is not warranted in this case. As such Defendant's motion is DENIED.

### A. *Plaintiff's Untimely Expert Disclosure*

Defendant's first argument is that Mr. Charles should be excluded because Plaintiff failed to disclose his expert report on or before March 25, 2022, as required in the Court's Scheduling Order. [D.E. 30 at 8]. Defendant claims that Plaintiff's piecemeal submission of multiple expert disclosures failed to comply with both the timing and substantive requirements of Federal Rule of Civil Procedure 26(a)(2), thus, his report should be striken by this Court. We disagree. Striking Mr. Charles' report under the circumstances of this case would be an excessive sanction given that neither the delay nor the deficiencies of the disclosures amounted to substantive harm to Defendant.

Rule 26(a)(2)(B)(i) provides that a written expert report must contain "a complete statement of all opinions the witness will express and the basis and reasons for them." An expert witness has a duty to supplement his or her report "in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information

6

has not otherwise been made known to the other parties during the discovery process or in writing." Fed. R. Civ. P. 26(e)(1)(A). "If a party fails to provide information . . . as required by Rule 26(a) or (e), the party is not allowed to use that information . . . to supply evidence . . . at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). "Exclusion is also appropriate pursuant to Rule 16(b), which 'authorizes the district court to control and expedite pretrial discovery through a scheduling order' and which gives the court 'broad discretion to preserve the integrity and purpose of the pretrial order,' including the exclusion of evidence as a means of enforcing the pretrial order." *Buxton v. Lil' Drug Store Prods., Inc.*, 2007 WL 2254492, at *7 (S.D. Miss. Aug. 1, 2007), *aff'd*, 294 F. App'x 92 (5th Cir. 2008) (quoting *Geiserman v. MacDonald*, 893 F.2d 787, 790 (5th Cir. 1990)).

When a party fails to comply with Rule 26, the sanction of exclusion is automatic and mandatory unless the sanctioned party can show that its violation was either justified or harmless. *See* Fed. R. Civ. P. 37(c)(1); *Cooper v. Southern Co.*, 390 F.3d 695, 728 (11th Cir. 2004) (explaining that compliance with Rule 26's expert disclosure requirements is "not merely aspirational"), *overruled on other grounds*, *Ash v. Tyson Foods, Inc.*, 546 U.S. 454, 457 (2006); *Mitchell v. Ford Motor Co.*, 318 F. App'x 821, 825 (11th Cir. 2009) (affirming order striking expert for not properly disclosing the scientific bases for his expert opinion in a timely manner); *United States v. Batchelor-Robjohns*, 2015 WL 1761429, at *2 (S.D. Fla. June 3, 2005) (granting motion to strike expert's report and excluding expert from

7

testifying and explaining that "Rule 37(c)(1) requires absolute compliance with Rule 26(a), in that it mandates that a trial court punish a party for discovery violations in connection with Rule 26 unless the violation was harmless or substantially justified.") (internal quotations omitted).

The determination of whether a party's failure is substantially justified or harmless lies within the "broad discretion" of the Court. *Abdulla v. Klosinski,* 898 F. Supp. 2d 1348, 1359 (S.D. Ga. 2012). In determining whether to allow an untimely expert report under Rule 37(c)(1), the Court considers: (1) the unfair prejudice or surprise of the opposing party, (2) that party's ability to cure the surprise, (3) the likelihood and extent of disruption to the trial, (4) the importance of the evidence, and (5) the offering party's explanation for its failure to timely disclose the evidence. *See Mobile Shelter Systems USA, Inc. v. Grate Pallet Solutions, LLC,* 845 F. Supp. 2d 1241, 1250–51 (M.D. Fla. 2012).

Here, the motion to strike does not, and cannot, allege that Defendant suffered meaningful harm as a consequence of Plaintiff's deficient disclosures. For starters, it is undisputed that while the scheduling order set March 25, 2022, as the expert disclosure deadline, the parties expressly stipulated to extending this deadline to at least April 12, and arguably up to April 15. *See* [D.E. 30-2]; [D.E. 38-2]. Keeping this chronology in mind, Plaintiff's final disclosure of April 15, then, was delayed by less than a week at most. Moreover, it is evident from the record that Defendant was put on notice of Plaintiff's intention to produce expert opinion regarding causation and cost of repairs as early as April 12. [D.E. 30-3].

This initial disclosure, although deficient in that it did not accurately convey that Mr. Charles would be providing causation testimony and omitted his actual report, did include the plumbing report prepared by Total Leak,³ as well as the exhibits documenting the state of the pipes that Mr. Charles relied on when reaching his own conclusions. This initial disclosure also included Mr. Charles' CV describing the extent of his experience analyzing properly loss claims. *Id.* at 9-24.

The record also reflects that Plaintiff's final disclosure and expert report was produced to Defendant more than three months in advance of the discovery cut-off date on July 28, 2022, and more than six months ahead of the trial scheduled to commence on November 22, 2022. [D.E. 22]. This factual context weighs heavily in favor of denial of the motion to strike. This procedural backdrop also makes it clear that none of the authorities that Defendant purports to cite in support of its motion are applicable here. In *Romero*, for instance, the plaintiff produced its incomplete disclosure report more than four months after the scheduling order deadline, which rendered the defendant unable to "prepare for rebuttal or cross-examination." *Romero v. Drummond Co.*, 552 F.3d 1303, 1323 (11th Cir. 2008) (affirming exclusion of expert). By comparison, here, Defendant was provided with Mr. Charles' expert report weeks in advance of the parties' rebuttal deadline, and more than two

---

³ On May 04, 2021, Plaintiff retained Total Leak Detection, a plumbing services provider, to examine the pipes and document the issues that were causing the sewage overflows at Plaintiff's property. Total Leak ran a video line though the plumbing system and captured video and photograph evidence documenting the state of deterioration of the pipes. Total Leak also prepared a report that concluded that the entire sanitary plumbing system needed to be replaced and provided an estimate of the cost that replacing the pipes would entail. *Id.* at 19. Plaintiff's initial disclosure listed Total Leak as an expert witness, but that was latter withdrawn.

9

months ahead of Mr. Charles' deposition, which Plaintiff took on June 28, 2022. [D.E. 18]; [D.E. 30-6]. Based on this context, we find that Plaintiff's motion to strike lacks merit.

To be sure, we do not find that Plaintiff's piecemeal productions of incomplete disclosures in this case is beyond reproach, but merely that Plaintiff's Rule 26(a)(2) deficiencies were not so egregious or harmful as to justify striking under the circumstances. As stated above, the record shows that Plaintiff produced an initial disclosure on April 12, 2022, a date the parties had agreed upon. Although this disclosure was woefully incomplete, it conveyed Plaintiff's intention to produce causation and cost of repair expert testimony, as well as the Total Leak report and the list of exhibits that Mr. Charles ultimately used for his own report; three days later, on April 15, Plaintiff produced Mr. Charles' final report, which expressly conveyed causation and replacement costs opinions, and confirmed that he consulted the Total Leak materials in reaching his conclusions; this final disclosure was produced weeks in advance of the May 5, 2022, rebuttal deadline, more than two months ahead of Mr. Charles' deposition on June 28, 2022, and more than six months before trial. In light of these facts, it is clear that Plaintiff's faulty disclosures were harmless and that the striking of Mr. Charles' testimony is unwarranted. *See Ferguson v. Bombardier Servs. Corp.*, 244 F. App'x 944, 950 (11th Cir. 2007) (upholding decision to allow expert report to be submitted after the discovery cut-off date, but eight months before trial); *Reese v. Herbert*, 527 F.3d 1253, 1265 (11th Cir. 2008) ("[T]he expert disclosure rule is intended to provide

10

opposing parties reasonable opportunity to prepare for effective cross examination and perhaps arrange for expert testimony from other witnesses."); *Benner v. NCL (Bahamas) Ltd.*, No. 15-20585-CIV, 2016 WL 11547582, at *8 (S.D. Fla. Mar. 29, 2016) (denying motion to strike "woefully inadequate" disclosure where "[Plaintff] received [expert's] report and his counsel used it to take [expert's] deposition"; *AIM Recycling of Fla., LLC v. Metals USA, Inc.*, No. 18-CV-60292, 2019 WL 11505086, at *3 (S.D. Fla. Oct. 8, 2019) (not striking untimely report where "[Defendants] have ample time to depose [ ] rebuttal expert and adequately prepare for trial."). Accordingly, Defendant's motion to strike on this basis is DENIED.

### B. *Whether Mr. Charles' Opinion Should be Excluded*

Defendant next argues that Mr. Charles' opinion should be excluded because it is unreliable. Notably, Defendant does not challenge Mr. Charles' qualifications to provide expert testimony regarding sewer pipe damage or construction repair costs.[4] Instead, Defendant makes *Daubert* challenges to multiple aspects of Plaintiff's expert opinion, including the methodology implemented by Mr. Charles in producing his repair cost estimate of $240,266, the lack of personal testing or observations by Mr. Charles upon the subject property, and Mr. Charles' overwhelming reliance on the Total Leak report and exhibits in reaching his causation and cost opinions.[5]

---

[4] Mr. Charles is the President and CEO of GRREEN ACE, LLC., a company that provides property loss analysis services. Mr. Charles has an engineering background and over two decades of experience in construction planning and design.
[5] We pause to note that Mr. Charles plans to provide opinion testimony regarding causation in this case. Although Defendant suggests that "Plaintiff did not retain

11

As noted above, "[t]he reliability standard is established by Rule 702's requirement that an expert's testimony pertain to 'scientific . . . knowledge,' since the adjective 'scientific' implies a grounding in science's methods and procedures, while the word 'knowledge' connotes a body of known facts or of ideas inferred from such facts or accepted as true on good grounds." *Daubert*, 509 U.S. at 580. This entails an assessment of whether the "methodology underlying the testimony is scientifically valid." *Id*. at 592. The four non-exhaustive factors used to evaluate the reliability of a scientific expert opinion include the following:

> (1) whether the expert's theory can be and has been tested; (2) whether the theory has been subjected to peer review and publication; (3) the known or potential rate of error of the particular scientific technique; and (4) whether the technique is generally accepted in the scientific community.

*Frazier*, 387 F.3d at 1262 (citations omitted).

After an independent review of the underlying expert report and the testimony in the record, we find that Defendant's motion lacks merit because Mr. Charles' opinions were arguably drawn from reasonable data and methods that characterize the practice of experts in his field. First, it is undisputed that Mr. Charles conducted an on-site visual inspection of Plaintiff's property and that he personally interviewed Plaintiff about the recurring sewage overflows and related damages. [D.E. 30-5 at 6] ("The purpose of the inspection was to determine the cause of and extent of water damage reported at the property . . . and also the

---

Mr. Charles to provide causation testimony," both his expert report and deposition testimony have made this explicitly clear for Defendant. *See* [D.E. 30-6 at 7:17-23] (Q. Okay. So you have causation opinions? A. I do. Q. Okay. All right. Let's go back to your report).

12

cost of repair to replace the cast iron drain line with PVC and restore building materials and interior finishes in all units."). As noted in the report, Mr. Charles' assessment of the property was also guided by industry standards, practice manuals, and his experience as a licensed engineer, building inspector, and general contractor. *Id.* at 6-7, 22 (citing, among others, to the "Standard and Reference Guide for Professional Water Damage Restoration"; the "Miami-Date County Property Appraiser Website"; and "Damage Assessment for Residential and Commercial Structures" literature). Indeed, the forty-one page long costs summary articulates in granular fashion the specific construction details and costs associated with each room, including the specific square footage and construction task involved. *Id.* at 39-84. We find that this constitutes sufficient indicia of reliability. *See Bodo v. GeoVera Specialty Ins. Co.*, No. 8:18-CV-678-T-30AAS, 2019 WL 9598314, at *4 (M.D. Fla. Mar. 8, 2019) ("Construction damage summary related to [] tear-out/cast iron pipe claim" admissible where licensed building contractor "personally inspected the property"; "talked to [Plaintff] about her loss"; and the "estimate include[d] the specific construction details and costs in each room.").

Although Defendant claims otherwise, nothing in its motion or the record it cites undermine the admissibility of, as opposed to the weight or strength of, Mr. Charles' expert opinion. It is noteworthy, for instance, that Defendant chose not to file a rebuttal opinion challenging the methodology employed by Mr. Charles. Likewise, a review of Mr. Charles' deposition transcript does not reveal any testimony calling into question the admissibility of his appraisal testimony. Indeed,

13

contrary to Defendant's assertion that Mr. Charles' failed to provide an explanation as to how he created the estimate, his testimony confirms the steps that he took in reaching his opinion, including inspecting the property in March 2022, interviewing Plaintiff about the incident, assessing Total Leak's report and photographic evidence of the pipe system, reviewing the record in this case, and relying on his substantial experience in the field of properly loss analysis. *See* [D.E. 30-6 at 8:3-9:5]. Mr. Charles also expressly explained the scope of his estimate and what it encompasses:

> The other parts of my estimate consisted of pretty much putting the sand around the PVC pipe, and then back filling it, and compacting it, and the concrete slabs that would be installed right above the compacted field, and also the finishing including flooring system; that would have been to be replaced in its entirety in each unit because, you know, the tiles match then, you know, you would need to replace the entire surface area. And whatever was affected by water would also have been replaced and whatever was damaged by the – during the demolition work it would also have to be replaced.

*Id.* at 11:8-12:15.

In sum, Defendant's assertions that Mr. Charles' estimate is unexplained or incapable of being tested are simply not supported by the record. As noted above, his report described the methodology he implemented in ascertaining his figures, and nothing in his deposition testimony, or elsewhere, suggests that his detailed forty-one page long summary is legally unreliable because it cannot be tested. *Cf. Jones Creek Invs., LLC v. Columbia Cnty.*, Georgia, No. CV 111-174, 2013 WL 12141348, at *19 (S.D. Ga. Dec. 23, 2013) (excluding costs estimates where expert conceded that his figures were "rough estimates rather than financial calculations,

and his calculations cannot be replicated because he deleted his work and cannot recreate it."). In the absence of rebuttal evidence undermining Mr. Charles' methods, or testimonial admissions indicating that his methods were indeed unreliable, we cannot agree that, under these facts, Mr. Charles' methods are so flawed as to warrant exclusion. *See Haman, Inc. v. Chubb Custom Ins. Co.*, No. 2:18-CV-01534-KOB, 2020 WL 4569470, at *6 (N.D. Ala. Aug. 7, 2020) (admitting causation opinion and appraisal estimates despite imperfect actual cash value and depreciation assessments by expert); *Furmanite Am., Inc. v. T.D. Williamson, Inc.*, 506 F. Supp. 2d 1126, 1131 (M.D. Fla. 2007) ("[Defendant's] arguments that [expert's] findings are speculative and lead to an unreliable estimate of worth are arguments as to the credibility of [the] findings rather than the general acceptance of his methods.").

Defendant's additional purported attacks on Mr. Charles' methodology are similarly unavailing. Defendant takes issue with the fact that Mr. Charles did not conduct any testing at the property himself, and that he blindly relied on Total Leak's report in reaching his causation opinion. These objections are of no moment. For starters, personally conducting testing is not a prerequisite for the admission of expert testimony, and Defendant cites no authority to the contrary. *See* Fed. R. Evid. 703 ("An expert may base an opinion on facts or data in the case that the expert *has been made aware of* or personally observed.") (emphasis added); *Peteet v. Dow Chem. Co.*, 868 F.2d 1428, 1432-33 (5th Cir. 1989) (rejecting argument seeking to exclude opinion of expert toxicologist because he never personally examined the

15

plaintiff). As noted above, Mr. Charles personally inspected the property, interviewed plaintiff about the incident, and relied on materials – including photographic and video evidence – that experts in his field normally rely on.

Similarly, Defendant's claim that Mr. Charles overwhelmingly relied on the Total Leak report fails to persuade. Although Defendant characterizes Mr. Charles' use of the report as an act of mere parroting, both the report itself, as well as Mr. Charles' deposition testimony contradict this claim. To begin with, and as noted earlier, Mr. Charles' opinion regarding cost of repairs goes well beyond the scope of the Total Leak report. Whereas the latter focused on the cost of repair to replace the cast iron plumbing system itself, the former also accounts for the costs associated with restoring the building materials and interior finishes in all units to pre-loss condition ("tear-out expenses"). [D.E. 30-5 at 7]. Further, Mr. Charles' opinion regarding causation is not just based on Total Leak's report. As he responded during his deposition:

> No, that's not – my opinion is not just based on that. I mean, clearly, I reviewed the reports and itemized the photographs that showed the rupture and corroded iron lines. But also my knowledge of, you know, plumbing systems and how they work. I have been a general contractor having built similar buildings then I am aware of what happens when sewage backup is experienced. Also, I collected information from the insured. And I also, you know, reviewed all the documentation that was provided and my reference manuals, and all of that together helped me to arrive at the opinion that I did.

[D.E. 30-6 at 14:4-16].

Furthermore, nothing in Defendant's motion challenges the legitimacy of the Total Leak report consulted by Mr. Charles. Defendant does not challenge the

16

accuracy of the report nor the propriety of the video and photographic evidence it documented, and we do not find anything in the record making us doubt its reliability. Accordingly, in light of this record, we cannot agree with Defendant's position that Mr. Charles' use of the plumbing report amounts to the kind of blind reliance on extraneous sources that warrants exclusion. *See Palma v. Safeco Ins. Co. of Illinois*, No. 820CV251TKKMJSS, 2021 WL 1405507, at *3 (M.D. Fla. Apr. 14, 2021) ("It is normal for one expert to partially rely on another expert's report to form his or her own opinion."); *Arch Specialty Ins. Co. v. Balzebre*, No. 10-23775-CIV, 2013 WL 12061814, at *1 (S.D. Fla. Jan. 9, 2013) ("There is a distinction, which is applicable here, between an expert basing his independent opinions upon hearsay and otherwise inadmissible evidence, and an expert merely parroting the expert opinion of another."); *Nat'l Union Fire Ins. Co. of Pittsburgh v. Tyco Integrated Sec., LLC*, No. 13-CIV-80371, 2015 WL 11251759, at *12 (S.D. Fla. July 6, 2015) ("an expert's hasty adoption of another expert's opinion raises concerns *to the extent that* the first expert's opinion may be unreliable.") (emphasis added); *Hendrix v. Evenflo Co.*, 255 F.R.D. 568, 607 (N.D. Fla. 2009), *aff'd sub nom. Hendrix ex rel. G.P. v. Evenflo Co.*, 609 F.3d 1183 (11th Cir. 2010) *(*"An expert may properly rely on the opinion of another expert.").

We recognize that Mr. Charles' methodology may be vulnerable to criticism, but "[a]n expert's method need not be perfect, nor need he apply it perfectly." *Banta Properties, Inc. v. Arch Specialty Ins. Co.*, 2011 WL 13096149, at *4 (S.D. Fla. Dec. 20, 2011) (citing *Pandora Jewelers 1995, Inc. v. Pandora Jewelry, LLC*, 2011 WL

17

2295269, at *5-6 (S.D. Fla. June 8, 2011) (noting that a rebuttal expert could testify to the flaws in a report based on imperfect data or imperfect methodology). The defects Defendant identifies merely affect the weight of Mr. Charles' opinions, as opposed to their admissibility. *See, e.g.*, *Pods Enterprises, Inc. v. U-Haul Int'l, Inc.*, 2014 WL 2625297, at *3 (M.D. Fla. June 12, 2014) ("PEI also argues that Dr. Wood improperly weighted the data, included improper questions, and failed to employ proper quality controls. These criticisms likewise go to the weight of her opinions, not their admissibility."). This means that, even if Mr. Charles did not use a perfect methodology, he used his extensive experience and observations to determine the cause of the pipes' malfunctioning, as well as the costs associated with restauration of the property post-removal. While Defendant may take issue with those observations, and challenge them at trial, Mr. Charles has presented a reliable methodology that passes muster under *Daubert* and therefore Defendant's motion to exclude his testimony and opinions is **DENIED**.

## C. *Whether Mr. Charles' Opinions are Relevant*

Lastly, Defendant moves this Court to exclude Mr. Charles' opinions on the basis that his opinions will not be helpful to the trier of fact due to their irrelevancy. Specifically, Defendant contends that Mr. Charles' replacement costs, which include costs associated with matching expenses, are irrelevant because the insurance policy in this case did not provide coverage of such losses. We reject this argument because the question of whether replacement or matching expenses are covered under the policy's terms is not an issue to be decided on a motion in limine. *See*

*Barnext Offshore, Ltd. v. Ferretti Grp. USA, Inc.*, No. 10-23869-CIV, 2012 WL 13012778, at *7 (S.D. Fla. May 24, 2012) ("Defendants' initial argument is an inappropriate request for the Court to rule on an issue of law. Such a request is not properly presented in a motion in limine and therefore will not be addressed further."); *Hall v. Nettles*, No. 1:08-CV-2437-TCB, 2010 WL 11493784, at *11 (N.D. Ga. Jan. 7, 2010) ("The Court finds that Defendants' arguments are their position on the disputed facts, and the Court will not resolve the factual disputes within the context of this motion."); *Soliday v. 7-Eleven, Inc.*, No. 2:09-CV-807-FTM-29, 2011 WL 1837807, at *1 (M.D. Fla. Apr. 20, 2011) (stating that a motion in limine is not a motion "to determine the sufficiency of the evidence or merits of an issue") (citation omitted).

Accordingly, we find that Mr. Charles' opinions as to what could have caused the cast iron pipes to malfunction and the cost of replacing the sewage system and restoration of the property are sufficiently related to the coverage dispute at hand, and would be helpful to the trier of fact. *See Marquez v. Nat'l Fire & Marine Ins. Co.*, 551 F. Supp. 3d 1313, 1324 (S.D. Fla. 2021) ("under Florida law, the replacement cost is still relevant to the jury's ultimate determination on damages, as actual cash value is typically derived from the full replacement cost.").

## IV. CONCLUSION

For the foregoing reasons, Defendant's *Daubert* motion [D.E. 30] to exclude the testimony and opinions of Plaintiff's experts is **DENIED**.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 19th day of October, 2022.

/s/ *Edwin G. Torres*
EDWIN G. TORRES
United States Magistrate Judge