UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 21-CV-23382-GAYLES/TORRES

ANDY PREDELUS,

    Plaintiff,
v.

ATAIN SPECIALTY
INSURANCE COMPANY,

    Defendant.
_____/

## ORDER

**THIS CAUSE** comes before the Court on Defendant Atain Specialty Insurance Company's Motion for Summary Judgment ("Defendant's Motion"), [ECF No. 27], and Plaintiff's Cross Motion for Partial Summary Judgment on Coverage ("Plaintiff's Motion"). [ECF No. 40]. The Court has reviewed the Motions and the record and is otherwise fully advised. For the reasons set forth below, Defendant's Motion is granted, and Plaintiff's Motion is denied.

### BACKGROUND[1]

This action is an insurance coverage dispute relating to the damage caused to an insured's property by deteriorated pipes.

**I.**     **The Loss and the Policy**

Plaintiff Andy Predelus is the owner of an apartment building in Miami, Florida (the "Property"). On March 28, 2021, water backed up in the shower drain, toilet, and sink in one of

---

[1] The relevant undisputed facts are taken from Defendant Atain Specialty Insurance Company's Statement of Material Facts in Support of its Motion for Summary Final Judgment ("Defendant's SOMF"), [ECF No. 28], and Plaintiff's Statement of Material Facts in Opposition to Defendant's Motion for Summary Judgment and in Support of Plaintiff's Cross Motion for Summary Judgment ("Plaintiff's SOMF"), [ECF No. 39].

1

the bathrooms on the Property, causing flooding in two of the apartments. [ECF No. 28 ¶ 10, 12]. On May 4, 2021, Plaintiff hired Total Leak Detection to perform a camera inspection of the Property's cast iron pipes. *Id.* ¶ 13. As a result of this inspection, Total Leak Detection recommended replacing the entire cast iron plumbing system because the existing pipes were beyond their life span. *Id.* ¶ 14. Aside from paying a plumber $87.51 to open a wall and clean up water on the day of the incident, Plaintiff has not made any repairs to the plumbing system. *Id.* ¶ 36.

At the time of the incident, Defendant Atain Insurance Company insured Plaintiff under a commercial insurance policy (the "Policy"). [ECF No. 28-1]. After an investigation, Defendant denied Plaintiff's claim finding there was no covered cause of loss under the Policy. [ECF No. 28 ¶¶ 15-16].

The relevant Policy language is as follows:

A.   Coverage

We will pay for direct physical loss of or damage to Covered Property . . . caused by or resulting from any Covered Cause of Loss.

\* \* \*

2.   Property Not Covered

\* \* \*

m.   Underground pipes, flutes or drains;

\* \* \*

3.   Covered Causes Of Loss

See applicable Causes of Loss Form as shown in the Declarations.

\* \* \*

B.    Exclusions

See applicable Causes of Loss Form as shown in the Declarations.

* * *

D.    Deductible

. . . If the adjusted amount of loss is less than or equal to the Deductible, we will not pay for that loss . . .

E.    Loss Conditions

The following conditions apply in addition to the Common Policy Conditions and the Commercial Property Conditions.

* * *

    4.    Loss Payment

        a.    In the event of loss or damage covered by this Coverage Form, at our option, we will either:

            (1)    Pay the value of lost or damaged property;
            (2)    Pay the cost of repairing or replacing the lost or damaged property, subject to b. below;
            (3)    Take all or any part of the property at an agreed or appraised value;
            (4)    Repair, rebuild or replace the property with other property of like kind and quality subject to b. below

* * *

G.    Optional Coverages

* * *

    3.    Replacement Cost

* * *

        d.    We will not pay on a replacement cost basis for any loss or damage:

            (1)    Until the lost or damaged property is actually repaired or replaced; and

            (2)    Unless the repairs or replacement are made as soon as reasonably possible after the loss or damage.

\* \* \*

## CAUSES OF LOSS – SPECIAL FORM

    A.    Covered Causes Of Loss

When special is shown in the Declarations, Covered Causes of Loss means Risks Of Direct Physical Loss unless the loss is:

    1.    Excluded in Section B., Exclusions; or

    2.    Limited in Section C., Limitations;

that follow.

    B.    Exclusions

    1.    We will not pay for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.

\* \* \*

    g.    Water[2]

    (1)    Flood, surface water, waves (including tidal wave and tsunami), tides, tidal water, overflow of any body of water, or spray from any of these, all whether or not driven by wind (including storm surge);

\* \* \*

    (3)    Water that backs up or overflows from a sewer, drain, sump pump or related equipment;

    (4)    Water under the ground surface pressing on, or flowing or seeping through:

(a) Foundations, walls, floors or paved surfaces;
(b) Basements, whether paved or not; or
(c) Doors, windows or other openings;

\* \* \*

---

[2] As modified by the Water Exclusion Endorsement [ECF No. 28-1, p. 62].

    2.    We will not pay for loss or damage caused by or resulting from any of the following:

* * *

    d.    (1) Wear and tear;

    (2) Rust or other corrosion, decay, deterioration, hidden or latent defect or any quality in property that causes it to damage or destroy itself;

* * *

But if an excluded cause of loss that is listed in 2.d.(1) through (7) results in a "specified cause of loss" or building glass breakage we will pay for the loss or damage caused by that "specified cause of loss" or building glass breakage.

* * *

C.    Limitations

The following limitations apply to all policy forms and endorsement, unless otherwise stated.

* * *

    4.    We will not pay the cost to repair any defect to a system or appliance from which water, other liquid . . . escapes . . .

* * *

F.    Additional Coverage Extensions

* * *

    2.    Water Damage, Other Liquids, Powder Or Molten Material Damage

If loss or damage caused by or resulting from **covered water** or other liquid, powder or molten material damage occurs, we will also pay the cost to tear out and replace any part of the building or structure to repair damage to the system or appliance from which the water or other substance escapes. . . .

* * *

G.    Definitions

* * *

    2.    "Specified cause of loss" means the following: . . . water damage.

* * *

    c.    Water damage means accidental discharge or leakage of water or steam as the direct result of the breaking apart or cracking of a plumbing, heating, air conditioning or other system or appliance (other than a sump system including its related equipment and parts), that is located on the described premises and contains water or steam

[ECF No. 28-1].

## II.    The Litigation

On August 31, 2021, Plaintiff filed this action setting forth claims for breach of contract (Count I) and declaratory relief (Count II). [ECF No. 1-1].[3] On April 12, 2022, Plaintiff served his expert witness list delineating Harold Charles as the expert who would "testify regarding the cost to repair the dwelling as a result of the loss." [ECF No. 28-8].[4] Mr. Charles's report (the "Report") provides a cost estimate of $240,266.73 "to repair the property to pre-loss condition." [ECF 39-4 at 10]. The Report does not contain figures for the actual cash value of the loss or estimates for depreciation. In opining on the cause of the pipe failure, Mr. Charles relies on Total Leak Detection's findings. *Id.*[5]

On August 11, 2022, Defendant filed its Motion for Summary Judgment arguing (1) the Policy does not cover the loss; (2) Plaintiff failed to establish the cause of loss via an expert; and (3) Plaintiff failed to establish recoverable damages. [ECF No. 27]. On September 6, 2022,

---

[3] Plaintiff filed the action in the Eleventh Judicial Circuit in and for Miami-Dade County, Florida. On September 21, 2021, Defendant removed the action to this Court on the basis of diversity jurisdiction. [ECF No. 1].

[4] Plaintiff also listed Rafael Diaz from Total Leak Detection as an expert who would testify as to the cause of the loss. [ECF No. 28-8]. Plaintiff later withdrew Mr. Diaz as an expert witness. [ECF No. 28 ¶ 37].

[5] Defendant moved to strike Mr. Charles as an expert, arguing that (1) Plaintiff failed to timely disclose him as an expert and (2) the Report could not be used to establish causation or damages. The Court referred the motion to Chief Magistrate Judge Torres, who ruled that Mr. Charles could testify as an expert. In particular, Judge Torres found that striking Mr. Charles based on an untimely expert disclosure was an excessive sanction. In addition, Judge Torres found that Mr. Charles's opinions were reliable and sufficiently related to the coverage dispute at hand and would be helpful to the trier of fact. [ECF No. 55]. Judge Torres noted that the question of whether replacement or matching costs are covered under the Policy was not an issue to be decided on a motion in limine. *Id.*

Plaintiff filed a response which included a motion for partial summary judgment as to coverage. [ECF No. 40].

## DISCUSSION

### I.  Summary Judgment Standard

Summary judgment, pursuant to Federal Rule of Civil Procedure 56(a), "is appropriate only if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." *Tolan v. Cotton*, 572 U.S. 650, 656-57 (2014) (per curiam) (quoting Fed. R. Civ. P. 56(a)) (internal quotation marks omitted). "By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no ***genuine*** issue of ***material*** fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original). An issue is "genuine" when a reasonable trier of fact, viewing all of the record evidence, could rationally find in favor of the nonmoving party in light of his burden of proof. *Harrison v. Culliver*, 746 F.3d 1288, 1298 (11th Cir. 2014). And a fact is "material" if, "under the applicable substantive law, it might affect the outcome of the case." *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1259-60 (11th Cir. 2004).

The Court must construe the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. *SEC v. Monterosso*, 756 F.3d 1326, 1333 (11th Cir. 2014). However, to prevail on a motion for summary judgment, "the nonmoving party must offer more than a mere scintilla of evidence for its position; indeed, the nonmoving party must make a showing sufficient to permit the jury to reasonably find on its behalf." *Urquilla-Diaz v. Kaplan Univ.*, 780 F.3d 1039, 1050 (11th Cir. 2015).

## II.     General Principles of Insurance Policy Construction

Under Florida law, interpretation of an insurance policy is a question of law to be decided by the court. *Canal Indem. Co. v. Margaretville of NSB, Inc.*, 562 F. App'x 959, 961 (11th Cir. 2014). "Insurance contracts are construed according to their plain meaning, with any ambiguities construed against the insurer and in favor of coverage." *U.S. Fire Ins. Co. v. J.S.U.B., Inc.*, 979 So. 2d 871, 877 (Fla. 2007). "[I]f a policy provision is clear and unambiguous, it should be enforced according to its terms whether it is a basic policy provision or an exclusionary provision." *Taurus Holdings, Inc. v. U.S. Fid. & Guar. Co.*, 913 So. 2d 528, 532 (Fla. 2005) (citation and internal quotation marks omitted). "If the relevant policy language is susceptible to more than one reasonable interpretation, one providing coverage and another limiting coverage, the insurance policy is considered ambiguous." *Garcia v. Fed. Ins. Co.*, 969 So. 2d 288, 291 (Fla. 2007) (quoting *Auto–Owners Ins. Co. v. Anderson*, 756 So. 2d 29, 34 (Fla. 2000)). "A provision is not ambiguous simply because it is complex or requires analysis." *Id*.

## III.    Coverage Under the Policy

The Court must first determine whether Plaintiff's loss is covered by the Policy. The central coverage issue here is whether the Policy's Water Exclusion provision excludes a loss caused by a corroded sewer pipe. Based on the Policy's terms, the Court finds that the Policy's Water Exclusion does not apply here as the damage was caused by water *originating* from the Property's plumbing system.

In *Cameron v. Scottsdale Ins. Co.*, 726 F. App'x. 757 (11th Cir. 2018), the Eleventh Circuit addressed an insurance policy with an identical definition of water damage and an identical water exclusion provision as that in the Policy here. Relying on *Cheetham v. Southern Oak Ins. Co.*, 114 So. 3d 257 (Fla. 3d DCA 2013), the court held that the water exclusion provision "pertain[ed] to

damage caused by water not originating from the residence premises' plumbing system even though the water or water-borne material eventually backs up through a pipe and/or drain within the plumbing system of the residence premises." *Id.* at 762 (quoting *Cheetham*, 114 So. 3d at 262-63). Accordingly, "the water-damage exclusion . . . applied only 'to damage caused by water originating from somewhere other than the residence premises' plumbing system.'" *Id.* at 761 (quoting *Cheetham*, 114 So. 3d at 263-64). Here, the water damage stems from the Property's plumbing system. Accordingly, the Water Exclusion does not exclude coverage, and the Policy affords coverage under the coverage extension for "water damage."[6]

## IV. Damages

The Court's inquiry, however, does not end with whether the loss is covered. The Court must also determine whether Defendant has breached the policy. The Court finds no breach because Plaintiff is not entitled to replacement cost value and has no evidence to establish actual cash value for damages.[7] Plaintiff alleges that Defendant breached the Policy by failing to cover the costs of opening the floors, replacing the pipes and floors, and removing and replacing undamaged property to match. The Policy, however, provides that Defendant "will not pay on a

---

[6] Defendant argues that the holdings in *Chabad of Key Biscayne, Inc. v. Scottsdale Ins. Co.*, No. 21-24043, 2022 WL 4535538 (S.D. Fla. Sept. 28, 2022), *Raffell v. Scottsdale Ins. Co.*, No. 20-21719, 2021 U.S. Dist. LEXIS 4843(S.D. Fla. Jan. 8, 2021) and *Purdy Lane Inc. v. Scottsdale Ins. Co.*, No. 20-80966, 2021 WL 1053283 (S.D. Fla. Feb. 11, 2021), command a different result. Defendant's argument is misplaced. In *Chabad, Raffell*, and *Purdy Lane*, the policies—presumably modified in reaction to *Cheetham* and *Cameron*—expressly defined drain and sewer to include the language "on or away from the premises." *See Raffell*, 2021 U.S. Dist. LEXIS 4843 at *13 ("The addition of the definitions of 'drain' and 'sewer'—and specifically, the language 'on or away from the premises'—to the Water Exclusion is significant and serves to expand its scope, not keep it consistent with *Cameron* and *Cheetham*'s interpretations or narrow it."); *see also Purdy Lane*, 2021 WL 1053283 at *6. As a result, the water exclusion in those cases applied because of the expanded definition of drain and sewer. Here, there is no definition of drain or sewer.

[7] Defendant also argues that Plaintiff has not established the cause of the loss. Specifically, Defendant argues that (1) Plaintiff, as a layperson, cannot testify as to causation; (2) Mr. Charles's report should be excluded as untimely; and (3) Mr. Charles cannot establish the cause of the loss because he did not directly observe the damage and only relies on Total Leak Detection's findings. Judge Torres has already ruled that Mr. Charles should not be stricken as an expert. And, while the Court agrees that Plaintiff cannot testify as a layperson as to causation, it declines to address whether Mr. Charles's opinions as to causation are sufficient as it finds that Plaintiff has not established entitlement to damages.

replacement cost basis for any loss or damage: (1) [u]ntil the lost or damaged property is actually repaired or replaced; and (2) [u]nless the repairs or replacement are made as soon as reasonably possible after the loss or damage." [ECF No. 28-1]. Aside from paying $87.50 to open the wall on the reported date of loss, [ECF No. 39 ¶ 36], Plaintiff did not make any repairs to the Property.[8]

"[C]ourts have almost uniformly held that an insurance company's liability for replacement cost does not arise until the repair or replacement has been completed." *Ceballo v. Citizens Prop. Ins. Corp.*, 967 So. 2d 811, 815 (Fla. 2007) (internal quotation omitted). *See also CMR Constr. & Roofing, LLC v. Empire Indem. Ins. Co.*, 843 F. App'x 189, 192 (11th Cir. 2021) (holding that insurer had not breached a policy because it was not obligated to pay the insured replacement cost value until the insured "had actually made the repairs and incurred the costs of doing so."); *Gulf Breeze Presbyterian Church v. Church Mut. Ins. Co.,* 3:21CV909-TKW-EMT, 2022 WL 2431440, at *2 (N.D. Fla. Mar. 15, 2022) ("In sum, because it is undisputed that Plaintiff has not repaired the damage to the insured building, Defendant did not breach the insurance policy by not paying the RCV claim submitted by Plaintiff.").

This action commands a similar result. Plaintiff has not incurred the costs of making the nearly $300,000 in alleged repairs. Moreover, Plaintiff failed to make the repairs "as soon as reasonably possible." [ECF No. 28-1]. Accordingly, Defendant could not have breached the policy for failing to pay Plaintiff the replacement cost value of the loss.

In response to Defendant's Motion, Plaintiff argues that Dr. Charles's estimate for replacement cost value supports a claim for the actual cash value of the loss and that the case should proceed to a jury. Plaintiff's argument misses the mark.

---

[8] Even if this could be considered a repair, the amount is woefully short of the Policy's $1000 deductible. *See* [ECF No. 28-1] ("If the adjusted amount of the loss is less than or equal to the Deductible, we will not pay for that loss. . .").

First, the scope of the Report is limited to repair or replacement costs and not actual cash value. Indeed, until filing his response to the Motion, Plaintiff had not raised actual cash value as a measure of damages or named an expert who could opine on the amount. A similar issue was presented in *CMR Constr.*, 843 F. App'x at 192. There, after finding that the plaintiff could not maintain a claim for replacement cost value because it had not made any repairs, the Eleventh Circuit held that the insurer couldn't have breached the policy for failing to pay actual cash value because the plaintiff never requested payment for actual cash value. *Id.* at 192-93. So too here. The Report is based solely on replacement cost value and, until this point in the litigation, Plaintiff had not requested actual cash value. Therefore, there can be no breach for failure to pay something that was never requested. *See id; see also Metal Products Co., LLC v. Ohio Sec. Ins. Co.*, 21-11612, 2022 WL 104618, at *3 (11th Cir. Jan. 11, 2022) (holding that where a plaintiff had only demanded replacement cost damages via an estimate from its expert, the plaintiff "could not change the nature of its demand for payment by asserting, in its opposition to summary judgment, that its estimate contained both ACV and RCV values.").

Despite having never made a claim for actual cash value, Plaintiff claims that Dr. Charles's estimate of replacement cost value can be used to determine actual cash value. While it is true that actual cash value is calculated by subtracting depreciation from replacement cost value, there is no evidence in the record of depreciation. Accordingly, Plaintiff would be unable at trial to establish actual cash value. *See Gulf Breeze Presbyterian Church*, 2022 WL 2431440, at *2 (holding that "because there is no evidence of the ACV of the covered loss, Plaintiff cannot establish that Defendant breached the policy by not paying the ACV of the loss . . ."). Accordingly, the Court finds that Defendant has not breached the Policy.

## CONCLUSION

Based on the foregoing, it is **ORDERED AND ADJUDGED** as follows:

1. Defendant Atain Specialty Insurance Company's Motion for Summary Judgment [ECF No. 16] is **GRANTED**, and Plaintiff's Motion for Summary Judgment [ECF No. 20] is **DENIED**.

2. The Court will enter a separate judgment.

3. This action is **CLOSED**, and all pending motions are **DENIED** as moot.

**DONE AND ORDERED in Chambers at Miami, Florida, this Tuesday, January 31, 2023.**

_____
DARRIN P. GAYLES
UNITED STATES DISTRICT JUDGE